UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| GENE KOHUT, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } |
| | } Case No.: 7:24-cv-00773-RDP |
| CHRISTIAN FALK et al., | } |
| | } |
| Defendants. | } |

## MEMORANDUM OPINION

Plaintiff Gene Kohut filed this suit against a number of Defendants. With one exception, they have all moved to dismiss this action. The motions include Defendant Purico Group Limited's ("PGL") Motion to Dismiss (Doc. # 14), Defendants Norbert Glawion ("Glawion") and Christian Falk's ("Falk") Motion to Dismiss (Doc. # 26), and Defendant Anil Puri's ("Puri") Motion to Dismiss (Doc. # 27). The Motions (Docs. # 14, 26, 27) have been fully briefed (Docs. # 15, 24, 25; 26, 30, 36; 27, 31, 35) and are ripe for review. For the reasons explained below, Defendants Glawion, Falk, and Puri's Motions to Dismiss (Docs. # 26, 27) are due to be granted, and Defendant PGL's Motion to Dismiss (Doc. # 14) is due to be granted in part. In short, the forum-selection clauses are valid and enforceable, and under the controlling weight of the *forum non conveniens* doctrine, the court concludes that the adjudication of this dispute should occur in Nuremburg, Germany.

**I.      Background**

This case presents the question of whether a German auto parts manufacturer lied about its ability or intention to perform on two contracts with an American auto parts manufacturer and, if so, who is responsible. Both manufacturers are now bankrupt, so the liquidating trustee for the American auto parts manufacturer has sued three individuals. He alleges they were officers or

directors of the German and American manufacturers, a holding company for the American and German manufacturers, and the parent company for the American and German manufacturers, respectively. For these reasons, Plaintiff brought this action against Defendants Falk, Glawion, Puri, White Capstan, Ltd. ("Capstan"),[1] and PGL. (Doc. # 1).

The allegations set out in the complaint are as follows: Plaintiff was appointed as the Liquidating Trustee of Bolta US, Ltd. ("BUSA") in the U.S. District Court for the Northern District of Alabama. (*Id.* ¶ 1). Falk and Glawion are U.S. residents and German citizens. (*Id.* ¶¶ 2-3). Puri is a United Kingdom resident and United Kingdom citizen. (*Id.* ¶ 4). Capstan and PGL are limited corporations organized under the laws of England and Wales. (*Id.* ¶¶ 5-6). Bolta Werke is a German auto parts manufacturer formed in 1921. (*Id.* ¶¶ 10-11). In 2011, Bolta Werke began investigating opportunities to open a parts manufacturer and distributor in the southeastern United States. (*Id.* ¶ 12). According to the complaint, PGL was a "parent company" of Bolta Werke, and "formed White Capstan as a holding company for Bolta Werke." (*Id.* ¶ 13). PGL's website also describes Capstan as a "holding company for our automotive businesses," which the website listed as including Bolta Werke and BUSA. (*Id.* ¶ 14).[2] PGL allegedly utilized Capstan to operate Bolta Werke "through individual directors [Falk], [Glawion], and [Puri]." (*Id.* ¶ 15). Puri is the brother of PGL's founder. (*Id.* ¶ 16).

"In September 2013, under the direction and control of Defendants, Bolta Werke announced its plans to open a manufacturing facility in Tuscaloosa County, Alabama." (*Id.* ¶ 17). "On March 6, 2014, [PGL] and [Capstan] formed [BUSA] under the laws of Delaware." (*Id.* ¶ 18). Falk was named director and Glawion was named President of BUSA. (*Id.* ¶¶ 19-20). Puri

---

[1] White Capstan has been served (Doc. # 8) but has not yet appeared. Plaintiff has not moved for a default judgment, nor has any party moved to set aside service on Capstan.

[2] PGL has filed an affidavit from its CEO that asserts PGL is *not* a parent company of Capstan. (*See* Doc. # 14-1 ¶ 11). The affidavit does not dispute, however, that Capstan is a holding company.

controlled the actions of BUSA, either by managing Capstan or in its capacity as officer and director of BUSA. (*Id.* ¶ 21). Before it commenced insolvency proceedings in 2021, Bolta Werke also directed and controlled BUSA, including by acting as the "Front Office" and "Back Office." (*Id.* ¶ 22; *see also id.* ¶ 67). "On May 15, 2014, under the direction and control of Defendants, Bolta Werke executed agreements with the Tuscaloosa County Industrial Development Authority for economic incentives to construct and operate the Facility." (*Id.* ¶ 23). Five days later, BUSA became qualified to do business in Alabama as "Bolta US, Inc." (*Id.* ¶ 24). BUSA's sister company, Bolta Investment Ltd., signed a contract to build the Facility and construction on their land began in July 2015. (*Id.* ¶¶ 25-26). "In January 2016, at the direction of Defendants, BUSA entered into a triple-net lease with [Bolta Investment Ltd.] for the Facility." (*Id.* ¶ 27).

    Additionally, in January 2015, "under the direction of Defendants, BUSA entered into a written Consultancy Agreement . . . with Bolta Werke," which was amended the following year to increase the prices charged under the agreement. (*Id.* ¶¶ 28-30).[3] The Consultancy Agreement expressly provided a choice-of-law provision: "This agreement shall be governed by and construed under the laws of Germany." (Doc. # 1-1 at 7). The Consultancy Agreement also provided a forum-selection clause: "The courts of Nuremberg shall have jurisdiction over all disputes arising from or in connection with this agreement." (*Id.*). The Consultancy Agreement further provided: "The German wording of this agreement is binding." (*Id.*). Falk executed the Consultancy Agreement and its amendment on behalf of Bolta Werke as President "despite his inherent conflict of interest due to being a Director of BUSA." (Doc. # 1 ¶ 31). Glawion executed the Consultancy Agreement and its amendment on behalf of BUSA "despite his inherent conflict of interest due to being an officer of Bolta Werke." (*Id.* ¶ 32). Neither Falk nor Glawion sought the approval of their Boards

---

[3] Because the Consultancy Agreement did not substantively change apart from the price increases, the court refers to a singular "Consultancy Agreement" and cites to the un-amended agreement.

of Directors nor did they conduct any international pricing studies. (*Id.* ¶¶ 31-32).

In March 2016, BUSA and Bolta Werke also entered into a Framework Agreement on the Cooperation in the IT Area ("IT Agreement"), which Falk executed on behalf of Bolta Werke and Glawion executed on behalf of BUSA.[4] (*Id.* ¶¶ 33-35). This occurred even though neither Defendant had sought approval from their respective companies' boards of directors or conducted an international pricing study. (*Id.*). The IT Agreement included a "Choice of Law/ Place of Jurisdiction/ Place of Fulfillment/ Contractual Language" section that provided: "The present agreement and its implementation are subject to German law . . . Nürnberg (Nuremberg), Germany shall be agreed upon as place of jurisdiction . . . . The legally binding contractual language shall be German." (Doc. # 1-3 at 5).

"From the formation of BUSA, and pursuant to the Consultancy Agreements and the IT Agreement, Bolta Werke was contractually responsible for many of the management, operations, and critical functions of BUSA." (Doc. # 1 ¶ 36). Although the Consultancy Agreement listed various "Administration" and "Technical" services that Bolta Werke was obligated to provide to BUSA, Bolta Werke failed to provide many of the services and inadequately provided others, but nevertheless demanded payment from BUSA. (*Id.* ¶¶ 37-43). And although the IT Agreement required Bolta Werke to implement a Systems Applications and Products System ("SAP System")[5] for BUSA, Bolta Werke "failed miserably" to do so, in part because it lacked experience. (*Id.* ¶¶ 46-52). This failure resulted in improper data processing and "caused BUSA's SAP system to wrongly calculate costs of manufacturing products," costing BUSA "significant money, time, and other resources to re-implement a SAP system." (*Id.* ¶¶ 52-54). Bolta Werke had also "failed

---

[4] The complaint states that Glawion executed this agreement "on behalf of Bolta Werke," but given the context of Glawion executing the Consultancy Agreement on behalf of BUSA, this appears to be a typographical error; the court understands that Glawion executed the agreement on behalf of BUSA. (*See* Doc. # 1 ¶ 35).

[5] The complaint defines a SAP System as one "which provides comprehensive data and analytics of a company's finances, manufacturing operation, and costs." (*Id.* ¶ 47).

to update its SAP software after March of 2020, eventually resulting in BUSA's system being five updates behind," which prevented BUSA from operating efficiently. (*Id.* ¶¶ 56-57). BUSA has paid over $300,000 to Bulheller Consulting, Inc. to perform the services Bolta Werke had promised, failed, and was paid to provide under the IT Agreement. (*Id.* ¶ 58).

On BUSA's behalf, Bolta Werke negotiated and agreed to BUSA's terms, conditions, and pricing for its goods and services. (*Id.* ¶ 60). Glawion and Falk personally approved these terms and contracts despite their inherent conflicts of interest (Glawion as both Head of Commercials for Bolta Werke and President and BUSA, and Falk as both President of Bolta Werke and Director of BUSA). (*Id.* ¶¶ 61-62). "From the time that BUSA was formed, Defendants represented to BUSA that Bolta Werke had the specialized abilities and experience to provide the IT, marketing, sales, pricing, logistics, enterprise resource planning, engineering, development and manufacturing services necessary to make BUSA profitable." (*Id.* ¶ 63). These "representations were not true, and Defendants knew, or should have known, that Bolta Werke could not perform as represented." (*Id.* ¶ 64). And, although the Consultancy, IT, and Terms Agreements benefitted Bolta Werke, they "were disastrous for BUSA." (*Id.* ¶ 65).

BUSA began hiring employees in July 2017 and later began producing parts. (*Id.* ¶¶ 68-70). Bolta Werke commenced insolvency proceedings in Germany in September 2021, and two months later, insolvency proceedings were also opened regarding Bolta Werke's assets. (*Id.* ¶¶ 71-72). On or about January 2022 and March 2022, "Bolta Werke asserted claims against BUSA in the amount of **19,563,400.90 Euros** and demanded immediate payment thereof." (*Id.* ¶ 73 (emphasis in original)).

Plaintiff as trustee has asserted the following claims: fraud against all Defendants (Count I); negligent misrepresentation against all Defendants (Count II); breach of fiduciary duties against Falk, Glawion, and Puri (Count III); and interference with business relations against all Defendants

5

(Count IV). (*See id.* ¶¶ 74-95). Defendants Falk, Glawion, and Puri have moved to dismiss based on the doctrine of *forum non conveniens*. (Docs. # 26 at 1; 27 at 1). Defendant PGL has moved to dismiss based on alternative grounds – a lack of personal jurisdiction and failure to state a claim. (Doc. # 15 at 5). Defendant Capstan has not appeared in this matter. For the reasons discussed below, the doctrine of *forum non conveniens* requires dismissal of this case. Because German law controls this case and Nuremberg, Germany is a more convenient forum, Defendant PGL's arguments about personal jurisdiction and failure to state a claim are better addressed in that forum and the court declines to address them here.

**II.     Legal Standard**

The doctrine of *forum non conveniens* operates to ensure that the trial of the parties' dispute "is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). Typically, a *forum non conveniens* motion requires a court to "evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 571 U.S. 49, 62 (2013). However, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. Therefore, "'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). When a district court considers a *forum non conveniens* motion and there is a valid and enforceable forum-selection clause, the court "may consider arguments about public-interest factors only." *Id.* These include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (internal quotation marks omitted). In this calculus, the court should presume that the "transfer of venue will not carry

with it the original venue's choice-of-law rules." *Id.*

"In reviewing a motion to dismiss for *forum non conveniens*, [the court] accept[s] as true the factual allegations in the complaint to the extent they are uncontroverted by affidavits or other evidence . . . . [and] also draw[s] all reasonable inferences in favor of the plaintiff[]." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020). Plaintiff attaches a copy of the Consultancy Agreement and IT Agreement to his complaint (*see* Docs. # 1-1; 1-2; 1-3), so the court may consider these attachments in its ruling on the motion. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss.").

### III.   Analysis

Plaintiff asserts claims sounding in tort that are based on the two contracts at issue here – the Consultancy Agreement and the IT Agreement. Those two contracts contain forum-selection clauses that designate Nuremburg, Germany as a proper forum for this dispute. They also contain choice-of-law clauses that provide German law is the proper law to be applied in this dispute. Defendants Falk, Glawion, and Puri argue that the forum-selection and choice-of-law clauses mandate dismissal of this action so it can be refiled in the proper forum: Nuremberg, Germany. Although Defendant PGL contends that the case against it should be dismissed for lack of personal jurisdiction, the *forum non conveniens* analysis produces the same result for PGL and so the court need not address its personal jurisdiction over PGL. And although Capstan has not appeared in this matter, for the reasons discussed below the court concludes that the forum-selection clauses and resulting *forum non conveniens* analysis applies to Capstan as well.

No party disputes the validity or enforceability of the forum-selection clauses in the Consultancy Agreement or the IT Agreement. (Docs. # 26, 27, 30, 31). Indeed, the Supreme Court has recognized a presumption of validity for a forum-selection clause in a freely negotiated private

7

international agreement. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972). The parties do, however, disagree about the clauses' applicability to Defendants and to Plaintiff's claims, and whether they are permissive or mandatory. (*See* Docs. # 30 at 7; 31 at 6). The court considers each of these disputes in turn.

### A. Application to Non-Signatories

First, the court must consider whether Defendants can enforce the forum-selection clauses in the Consultancy and IT Agreements. The only signatories to those agreements were Bota Werke and BUSA (with Falk signing on behalf of Bolta Werke and Glawion signing on behalf of BUSA). (*See* Docs. # 1-1 at 7; 1-2 at 3; 1-3 at 5). Plaintiff argues that Defendants cannot enforce the forum-selection clauses because a forum-selection clause can only be enforced by a party to the contract. (Docs. # 30 at 7-8; 31 at 6-7). Glawion and Falk respond that they can enforce the forum-selection clauses because they are closely related signatories and participants in the agreements. (Doc. # 36 at 1-2). Puri responds that he can enforce the forum-selection clause because there are two applicable exceptions to the general rule against non-parties enforcing a forum-selection clause, each of which he contends applies here. (Doc. # 35 at 2-4).

"A forum selection clause, like an arbitration clause, is a contractual provision that cannot ordinarily be invoked by or against one who was not a party to the agreement in which the clause appears." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1087 (11th Cir. 2024) (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)). However, "[t]his general rule, like most, has its exceptions." *Id.* One such exception is "estoppel." *Id.* (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). As the Eleventh Circuit has explained, "[e]quitable estoppel allows a non-party to enforce the provisions of a contract against a signatory . . . when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-party." *Id.* at 1087-88 (citation omitted).

8

This exception applies here. Plaintiff – a signatory to the Consultancy and IT Agreements – has relied on the terms of those contracts to assert his claims against non-signatories Puri, Glawion, Falk, PGL, and Capstan. "A signatory relies on the terms of a contract when its claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 1088 (quoting *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1343 (11th Cir. 2012)). In the Eleventh Circuit, "the signatory 'must actually depend on the underlying contract to make out his or her claim against the nonsignatory.'" *Id.* (quoting *Byers*, 701 F.3d at 1343). "To actually rely on the contract, the signatory's claims 'must attempt to hold the nonsignatory to the terms of the contract.'" *Id.* (quoting *Byers*, 701 F.3d at 1343 (other citations removed)). "In essence, equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Byers*, 701 F.3d at 1343.

Plaintiff's claims against Puri, Glawion, Falk, PGL, and Capstan sufficiently rely on the Consultancy and IT Agreements so as to permit those Defendants to enforce the forum-selection clauses in those contracts. For example, Plaintiff asserts that Defendants committed fraud because they "made false representations of material facts" when they signed the Consultancy and IT Agreements. (Doc. # 1 ¶ 75). Next, Plaintiff asserts that Defendants negligently misrepresented material facts when they signed the Consultancy and IT Agreements. (*Id.* ¶ 81). Plaintiff further asserts that Falk, Glawion, and Puri breached their fiduciary duties to Plaintiff "by making decisions on behalf of BUSA that harmed BUSA to the benefit of White Capstan and [PGL]." (*Id.* ¶ 88). Plaintiff next asserts that *all* Defendants interfered with business relations "by preventing BUSA from being able to efficiently fulfill its production obligations." (*Id.* ¶ 93). Other allegations similarly implicate Defendants in Bolta Werke's failure to perform under the contracts, alleging that "[d]espite wholly failing to provide many of the services listed in the Consultancy

Agreements, and inadequately providing others, Bolta Werke, *by and through Defendants*, invoiced BUSA, demanded payment from BUSA, and required BUSA to pay Bolta Werke" (*id.* ¶ 43 (emphasis added)); "under the direction of *Defendants*, BUSA entered into a written Consultancy Agreement" (*id.* ¶ 28 (emphasis added)); "Falk executed the IT Agreement on behalf of Bolta Werke" (*id.* ¶ 34); "Glawion executed the IT Agreement on behalf of Bolta Werke" (*id.* ¶ 35); and "[t]he Consultancy Agreements, IT Agreement, and Terms that were negotiated, approved and entered into *by Defendants* on behalf of BUSA benefitting Bolta Werke, but were disastrous for BUSA." (*Id.* ¶ 65) (emphasis added). Plaintiff seeks to hold non-signatories (Puri, Glawion, Falk, PGL, and Capstan) to the terms of the contracts but simultaneously attempts to avoid the forum-selection clauses that those contracts impose. Those positions are irreconcilable. The equitable estoppel exception to the general rule applies and Glawion, Falk, Puri, PGL, and Capstan can enforce the forum-selection clauses against Plaintiff.

### B.     Applicability to Claims Sounding in Tort

Second, the court must consider whether Plaintiff's tort claims are sufficiently related to the Consultancy and IT Agreements to be governed by the forum-selection clauses in the agreements. "To determine whether [a plaintiff] is bound by [a forum-selection] clause, we look first to the language of the clause." *Byers*, 701 F.3d at 1340.

The language of the clause in the Consultancy Agreement states: "[t]he courts of Nuremberg shall have jurisdiction over all disputes arising from or in connection with this agreement." (Doc. # 1-1 at 7). The language of the clause in the IT Agreement states: "[t]he present agreement and its implementation are subject to German law. . . . Nürnberg (Nuremberg), Germany shall be agreed upon as place of jurisdiction." (Doc. # 1-3 at 5). Because the Consultancy Agreement states the forum-selection clause governs "*all* disputes arising from or in connection with this agreement" (Doc. # 1-1 at 7) it is sufficiently broad to cover Plaintiff's claims that sound

10

in tort. *See McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1307 (M.D. Ga. 2003) (interpreting a nearly identical clause); *Smith v. Pro. Claims, Inc.*, 19 F. Supp. 2d 1276, 1282 (M.D. Ala. 1998) (interpreting a clause covering any dispute "arising between the parties hereunder"). And, although the IT Agreement's language differs, a plain textual reading of the unqualified language that "Nürnberg (Nuremberg), Germany shall be agreed upon as place of jurisdiction" (Doc. # 1-3 at 5) indicates that it similarly applies to disputes that are related to the agreement.

Falk, Glawion, and Puri argue that Plaintiff's claims "emanate from Bolta Werke's failed performance of the Consultancy and IT Agreements" (Doc. # 27 at 8) and "rest entirely on alleged malfeasance of the Moving Defendants in entering the Framework Agreement and Consultancy Agreement. (Doc. # 26 at 12). The court agrees. As discussed above, although Plaintiff's claims sound in tort (not contract), they are inextricably bound up in the Consultancy and IT Agreements. In other words, Plaintiff's claims "aris[e] from or in connection" with these agreements, placing them squarely within the forum-selection clauses' language. Therefore, the forum-selection clauses cover Plaintiff's claims.

      **C.**    **Enforcement of Forum-Selection Clauses**

Third, the court must consider whether the forum-selection clauses are mandatory or permissive, and what effect this should have on *forum non conveniens* analysis. Ordinary principles of contract interpretation guide whether a forum-selection clause is mandatory, meaning that when a contract provision is "is subject to opposing, yet reasonable interpretation, an interpretation is preferred which operates more strongly against the party from whom the words proceeded." *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269 (11th Cir. 2004) (quoting *Citro Fla., Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th Cir. 1985) (per curiam) (in turn quoting *Zapata Marine Serv. v. O/Y Finnlines, Ltd.*, 571 F.2d 208, 209 (5th Cir. 1978))).

A "permissive" forum-selection clause "authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" *Starmill U.K. Ltd.*, 378 F.3d at 1272 (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)). "One hallmark of a mandatory clause is the use of the imperative term 'shall,' which prescribes a 'requirement.'" *Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012) (per curiam) (quoting *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011)). For example, the Eleventh Circuit has construed the following clause as permissive: "Place of jurisdiction is Sao Paulo/Brazil." *Citro Fla., Inc.*, 760 F.2d at 1231. As the panel explained, this was because the clause did not specify that Sao Paulo was "the *only* place of jurisdiction." *Id.* at 1231-32 (emphasis in original). Conversely, the Eleventh Circuit has construed the following clause as mandatory: "Venue shall be in Broward County." *Starmill U.K. Ltd.*, 378 F.3d at 1272. This result followed from the clause's use of "the imperative 'shall.'" *Id.*

Once again, the forum-selection clauses read: "The courts of Nuremberg *shall* have jurisdiction over *all* disputes arising from or in connection with this agreement" (Doc. # 1-1 at 7 (Consultancy Agreement) (emphases added)) and "Nürmberg (Nuremberg), Germany *shall* be agreed upon as place of jurisdiction." (Doc. # 1-3 at 5 (IT Agreement) (emphasis added)). Both clauses use the "imperative 'shall.'" *Starmill U.K. Ltd.*, 378 F.3d at 1272. Additionally, the Consultancy Agreement language includes the broad language covering "*all* disputes arising from or in connection with this agreement." (Doc. # 1-1 at 7 (emphasis added)). There is no evidence that these clauses were intended to be permissive, and indeed, interpreting them in such a way could render their plain use of "shall" meaningless. *See Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1439 (11th Cir. 1996) ("An interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions meaningless." (citations and

internal quotation marks omitted)). Considering all of these factors, the court construes both forum-selection clauses as mandatory and enforceable.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Constr. Co., Inc.*, 571 U.S. at 60. Forum-selection clauses "are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Feggestad v. Kerzner Int'l Bahamas Ltd.*, 843 F.3d 915, 918 (11th Cir. 2016).

Because the forum-selection clauses are valid and mandatory, they represent Plaintiff's waiver of the right to challenge Nuremberg, Germany as inconvenient (or even less convenient) for himself and his witnesses. *Atlantic Marine Constr. Co., Inc.*, 571 U.S. at 64. This also means that the forum-selection clauses should be "given controlling weight in all but the most exceptional cases." *Id.* (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). Additionally, the validity of these clauses means that the court will only evaluate the public interest factors outlined in *Piper Aircraft*. Going through those factors, there is simply no evidence that the courts of Nuremberg, Germany would suffer from administrative difficulties flowing from court congestion. Nuremberg, Germany has an equally strong "local interest" as compared to the Northern District of Alabama in resolving these disputes because they touch companies and citizens in Germany as well as the United States. And, German choice-of-law rules govern given the parties' choice-of-law clauses (despite Plaintiff's choice to flout the forum-selection clause by filing here). *See Piper Aircraft Co.*, 454 U.S. at 241 n.6. The public interest factors are either neutral or in favor of this case being filed in Nuremberg, Germany. Therefore, the doctrine of *forum non conveniens* requires this court to dismiss this case so it can be refiled in Nuremberg, Germany.

Finally, the court briefly acknowledges that Capstan has not appeared in this case and has to date not sought to enforce the forum selection clauses here, even though it has apparently been

13

served by Plaintiff. (*See* Doc. # 8). Plaintiff has not sought entry of default against Capstan. Because the *forum non conveniens* doctrine applies to Plaintiff's claims against Capstan, the court declines to adjudicate this case further as to Capstan as doing so would effectively bifurcate the case with parties litigating (including default litigation) on two continents. Instead, Plaintiff can take up all appropriate legal or procedural issues regarding Capstan, including any failure to defend, after refiling his case in Germany.

## IV.   CONCLUSION

For the foregoing reasons, Defendants Glawion, Falk, and Puri's Motions to Dismiss (Docs. # 26, 27) are due to be granted, and Defendant PGL's Motion to Dismiss (Doc. # 14) is due to be granted in part. This case is due to be dismissed. A separate order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this July 18, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE